UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS DESCAMPS, <br><br> Plaintiff, <br><br> v. <br><br> CHICAGO HOUSING AUTHORITY, JOLEN ELECTRIC AND COMMUNICATIONS, INC., ALBANY HOUSING DEVELOPMENT, LLC, THE MICHAELS ORGANIZATION, LLC, SKENDER GROUP, LLC, BLACKWOOD GROUP, LLC, <br><br> Defendants. | Case No. 1:24-cv-04918 <br><br> Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

For the reasons explained below, the pending motions to dismiss, [47], [54], [55], [56], [72], [74], are denied. The court orders jurisdictional discovery as to defendant the Michaels Organization. The other defendants shall file their answers by May 19, 2025.

**BACKGROUND**

The court draws the following facts from the allegations in the first amended complaint, which must be accepted as true for purposes of the motions to dismiss. *See Boucher Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018) (citation omitted).

The Chicago Housing Authority ("CHA") is the largest public housing agency in the United States, and the largest owner of rental property in Chicago. [36] ¶¶ 1–3.[1] In December 2022, CHA quitclaimed a property it owned to Albany Housing Development, LLC ("Albany Housing"), to rehabilitate the property. *Id.* ¶¶ 4–5. This rehabilitation project is referred to in the complaint as "the Albany Terrace project." *See id.* ¶ 5.

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

According to the complaint, either CHA or Albany Housing engaged the Michaels Organization to work on the Albany Terrace project. *Id.* ¶ 6. Then, one of CHA, Albany Housing, or the Michaels Organization engaged Skender Group, LLC ("Skender") and Blackwood Group, LLC ("Blackwood") as general contractors for the Albany Terrace project. *Id.* ¶ 7. Either Skender or Blackwood, in turn, brought Jolen Electric and Communications, Inc. ("Jolen") onto the project as a subcontractor. *Id.* ¶ 8.

On April 11, 2024, Jolen created a job posting with the International Brotherhood of Electrical Workers, Local 134, advertising two journeyman wireman positions. *Id.* ¶¶ 17–18. Eight days later, Jolen created a second posting, this one advertising four journeyman wireman positions. *Id.* ¶ 20. (It is not clear whether the four positions included in the second posting included the two included in the first posting.) Both postings listed the address for Albany Terrace as the worksite. *Id.* ¶¶ 22–23. Both postings also contained the language "MUST BE A MINORITY." *Id.* ¶ 21. The complaint alleges (in separate paragraphs) that Jolen added this language as a result of a mandate from CHA, Albany Housing, the Michaels Organization, Skender, and Blackwood. *Id.* ¶¶ 27–31.

Douglas Descamps is a journeyman wireman and a member of the International Brotherhood of Electrical Workers, Local 134. *Id.* ¶¶ 14, 19. However, he is not a minority. *Id.* ¶¶ 32–33. Thus, he did not bid on the jobs in the postings. *Id.* ¶ 34. In an affidavit attached to his response to one of the motions to dismiss, [67-4],[2] he explained that he did not apply because doing so would have required him to give up his existing job and lose his benefits. *Id.* ¶ 3.

Instead, he filed this suit against CHA and Jolen, alleging violations of 42 U.S.C. § 1981. [1]. After the court granted leave to file an amended complaint, [35], Descamps filed an amended complaint reiterating his claims against CHA and Jolen and adding § 1981 claims against Albany Housing, the Michaels Organization, Skender, and Blackwood, as well as a § 1983 claim against CHA for violations of the Fourteenth Amendment's Equal Protection Clause. [36].

Before the court are defendants' motions to dismiss for lack of subject-matter jurisdiction and failure to state a claim. [47], [54], [55], [56], [72], [74].[3]

---

[2] The court can consider the facts in the affidavit in deciding whether it has subject-matter jurisdiction. *See Cent. States, Se. & Sw. Areas Pension Fund v. Marine Contracting Corp.*, 878 F. Supp. 1176, 1178 (N.D. Ill. 1995) ("In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court may properly consider the affidavits and other evidence submitted by the parties.").

[3] The court previously struck [74] as duplicative. However, the parties have since clarified, *see* [84], that they wish to have [74] considered rather than [73]. Thus, [73] is stricken as duplicative and the court will consider [74], including the attached affidavit, [74-1].

## DISCUSSION

**I.  Jurisdiction**

First, each defendant argues that Descamps lacks Article III standing. Even if defendants had not raised these arguments, the court would still "have an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Thus, the court will address these arguments first.

**A.  Legal Standard**

"In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Here, the Michaels Organization submitted an affidavit in support of its argument that Descamps lacks standing to sue it. *See* [74-1]. This indicates that its challenge is factual—that is, it "contends that there is *in fact* no subject matter jurisdiction,' even if the pleadings are formally sufficient." *Id.* (emphasis in original) (quoting *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)). "In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Id.*

The other defendants, by contrast, raise only facial challenges to subject-matter jurisdiction—that is, they "argue[] that the plaintiff has not sufficiently '*alleged* a basis of subject matter jurisdiction.'" *Id.* (emphasis in original). "In reviewing a facial challenge, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id.*

**B.  Analysis**

Federal courts "possess only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal statute provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because Descamps's claims are brought under federal statutes, they "arise under" federal law. *See Atl. Richfield Co. v. Christian*, 590 U.S. 1, 13 (2020) ("In the mine run of cases, 'a suit arises under the law that creates the cause of action.'" (quoting *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)) (internal alterations omitted)). Thus, the claims are clearly within the statutory grant of jurisdiction.

That does not end the inquiry, however, because Article III limits federal jurisdiction to certain "Cases" and "Controversies." U.S. Const. art. III, § 2. "One of the essential elements of a legal case or controversy is that the plaintiff have standing to sue." *Trump v. Hawaii,* 585 U.S. 667, 697 (2018). "The requisite elements of

Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022).[4]

### 1. Injury-in-Fact

The injury-in-fact requirement is satisfied only by "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). Defendants argue that Descamps has not suffered a sufficient injury-in-fact because he did not actually apply for either position.

The law does not support defendants' position. A plaintiff can "establish standing to challenge the hiring process . . . by showing that he would have been 'able and ready' to apply for" the position. *Tarpley v. Jeffers*, 96 F.3d 921, 924 (7th Cir. 1996); *see Carney v. Adams*, 592 U.S. 53, 60 (2020); *cf. Gratz v. Bollinger*, 539 U.S. 244, 262 (2003). Based on the facts in his affidavit, [67-4], Descamps has satisfied that requirement. In the affidavit, Descamps states that he is a job applicant on the "Book 1" out-of-work list for his union. *Id.* ¶ 1. He further explains that bidding on a job for which he did not meet the qualifications (including, apparently, bidding on the two jobs marked "MUST BE A MINORITY") would require him to quit his existing job and lose his benefits. *Id.* ¶ 3. Thus, he explains, he declined to apply for the positions. *Id.* ¶ 1. It thus appears that Descamps was "able and ready" to apply to either position, and likely would have done so had the job postings not expressly disqualified him.

In short, Descamps's decision not to bear the costs of applying for a position that was clearly off-limits to him does not prevent him from challenging the decision to place it off-limits to him. *See Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 944 n.2 (1982) ("Because of the reciprocity requirement of § 46-613.01, appellants

---

[4] In their briefing on the standing question, the parties make numerous arguments about the merits of Descamps's claims. Such arguments "conflate standing with the merits of the case." *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012). As the Supreme Court has explained, so-called "statutory standing" is not a jurisdictional requirement. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). Thus, "[d]ismissal for lack of subject-matter jurisdiction is proper only when the claim is so 'completely devoid of merit as not to involve a federal controversy.'" *Brownback v. King*, 592 U.S. 209, 217 (2021) (internal alterations omitted). Even assuming that defendants' arguments are correct, they do not show that Descamps's claims are so meritless as to deprive the court of jurisdiction. Instead, the court will treat defendants' arguments as arguments seeking dismissal under Rule 12(b)(6) for failure to state a claim. *See D.G. ex rel. Tang v. William W. Siegel & Assocs., Att'ys at Law, LLC*, 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) ("[A] motion for lack of prudential or statutory standing is evaluated under Rule 12(b)(6).").

would not have been granted a permit had they applied for one. Their failure to submit an application therefore does not deprive them of standing to challenge the legality of the reciprocity requirement.").

### 2. Traceability

Some of the non-Jolen defendants also assert (or make arguments that could be understood as asserting) that Descamps's injuries are not "fairly traceable" to each defendant, as required for Descamps to have standing to sue that defendant. *See Lujan*, 504 U.S. at 561.

#### a. Descamps's Complaint

Accepting the allegations in the complaint as true—as the court must do in adjudicating the facial challenges—Descamps has properly alleged traceability. Descamps alleges that each non-Jolen defendant required Jolen to impose the minority requirement. [36] ¶¶ 27–31. The non-Jolen defendants object that Descamps alleged that each of them issued the same mandate. However, that does not refute standing at the pleading stage. "[I]t is well-settled that a plaintiff may plead [his] claims in the alternative." *Totty v. Anderson Funeral Home, Ltd.*, 448 F. Supp. 3d 928, 935 (N.D. Ill. 2020); *see* Fed. R. Civ. P. 8(d)(2). Moreover, it is plausible that each allegation is true—for example, if (as Descamps's briefs seem to suggest) CHA directed Albany Housing to maintain a particular racial composition in its workforce; to fulfill that requirement, Albany Housing directed the Michaels Organization to maintain a particular racial composition in *its* workforce; and so on.

It is true that "plaintiffs attempting to show causation generally cannot 'rely on speculation about the unfettered choices made by independent actors not before the courts.'" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 415 n.5 (2013)). But as alleged, the third-party choices here were neither "unfettered" nor "made by independent actors not before the courts." Descamps has adequately alleged traceability for each defendant.

#### b. The Purcell Affidavit

As noted above, however, the Michaels Organization raises a factual challenge to Descamps's standing. Surviving a factual challenge requires more than simply alleging jurisdiction. *See Silha*, 807 F.3d at 173. Rather, "the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Id.*

Here, the evidence includes an affidavit from Joseph Purcell, the Vice President and Treasurer of the Michaels Organization. [74-1]. In the affidavit, Purcell explains that "the Michaels Organization had no involvement with the bidding or choosing of the general contractor(s), nor were they involved in any negotiations for

or entering into the Albany Terrace GC Contract." *Id.* ¶ 4. He further explains that the Michaels Organization "has no direct involvement with" Albany Terrace. *Id.* ¶ 6. In response, Descamps points to a series of press releases from various defendants and other media coverage related to Albany Terrace, which note the Michaels Organization's involvement with the project. [76] at 2. He also argues that discovery is needed to evaluate the Michaels Organization's involvement with the property. *Id.*

The court construes the argument that discovery is needed as a request for jurisdictional discovery on the question of the Michaels Organization's involvement. "It is within this [c]ourt's discretion to permit jurisdictional discovery." *Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009). This includes discovery on issues relating to the court's subject-matter jurisdiction. *See Woodard v. Quote Storm Holdings, LLC*, No. 23 C 55, 2023 WL 3627719, at *3 (N.D. Ill. May 24, 2023). Such discovery is proper "[w]here the evidence offered by the parties is inconclusive as to subject-matter jurisdiction." *Id.* That is the case here: The court cannot ascertain the Michaels Organization's precise role (if any) in the Albany Terrace project based on the current record. Accordingly, the court will permit discovery on that question to determine whether subject-matter jurisdiction exists. Until the factual dispute is resolved, however, dismissal for lack of subject-matter jurisdiction is not warranted. *See Ignatiev v. United States*, 238 F.3d 464, 467 (D.C. Cir. 2001) ("We have previously required that plaintiffs be given an opportunity for discovery of facts necessary to establish jurisdiction prior to decision of a 12(b)(1) motion."). The Michaels Organization may renew its Rule 12(b)(1) motion at the conclusion of jurisdictional discovery.

## II.  The Merits

Having rejected five defendants' challenges to Descamps's standing, the court will now address their arguments on the merits. *Cf. Horne v. Flores*, 557 U.S. 433, 446–47 (2009) ("Because the superintendent clearly has standing to challenge the lower courts' decisions, we need not consider whether the Legislators also have standing to do so. . . . Accordingly, we proceed to the merits . . . .").

### A.  Legal Standard

Rule 12(b)(6) permits the defendant to move for dismissal for failure to state a claim. In evaluating a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[N]aked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 557).

6

B.  Analysis

1.  Section 1981

The court first evaluates whether Descamps has adequately alleged claims under Section 1981. What is now Section 1981 was originally enacted as Section One of the Civil Rights Act of 1866. *See* 14 Stat. 27, § 1. "It was amended in minor respects in 1870 and recodified in 1874, but its basic coverage did not change prior to 1991." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372 (2004) (citation omitted). The original version of the statute is now codified as Section 1981(a), which as relevant here provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

In 1991, "Congress enacted the Civil Rights Act of 1991, which re-codified the preexisting version of § 1981 as subsection (a) and added subsections (b) and (c)." *Campbell v. Forest Preserve Dist. of Cook Cnty.*, 752 F.3d 665, 670 (7th Cir. 2014). Subsection (b) "supersede[d]" the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), by defining the term "make and enforce contracts" in subsection (a) to "include[] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," 42 U.S.C. § 1981(b). *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 450–51 (2008). Subsection (c), in turn, codified the Court's holding in *Runyon v. McCrary*, 427 U.S. 160 (1976), by expressly applying subsection (a) to both "impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c); *see Campbell*, 752 F.3d at 671.

Prior to the 1991 amendment, the Supreme Court had held that Section 1981 creates a private right of action against private actors, *see Johnson v. Rwy. Exp. Agency, Inc.*, 421 U.S. 454, 459–60 (1975), but not against state actors. *See Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 732 (1989) (plurality opinion). In *Campbell*, the Seventh Circuit explained that the 1991 amendment did not change the availability of private rights of action under Section 1981. *See* 752 F.3d at 671. In other words, Section 1981 continues to provide a private right of action against private actors, but not against state actors. As alleged, CHA is a "public housing agency," [36] ¶ 1, and thus a state actor. Accordingly, Descamps does not have a cause of action against CHA directly under Section 1981. However, Section 1983 provides a remedy for violations of Section 1981 by state actors. *Campbell*, 752 F.3d at 666–67.

The court thus turns to defendants' arguments that Descamps failed to state a claim under Section 1981.

a.  Minority Status

First, defendants argue that Descamps cannot bring a claim under Section 1981. That argument is directly contrary to the Supreme Court's decision in

7

*McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273 (1976). Writing for a unanimous Court, Justice Marshall explained in *McDonald* that "the language and history of § 1981" indicate "that § 1981 is applicable to racial discrimination in private employment against white persons." *Id.* at 286–87. That holding defeats defendants' contrary argument.

Defendants cite a number of Seventh Circuit cases that have listed plaintiffs' minority status as an element of a claim under Section 1981. *See, e.g.*, *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006) ("To establish a prima facie claim of such discrimination, Pourghoraishi must show that (1) he is a member of a racial minority . . . ."); *Morris v. Office Max*, 89 F.3d 411, 413 (1996) ("To establish a claim under § 1981, the plaintiffs must show (1) that they are members of a racial minority . . . ."); *McCalpine v. Foertsch*, 870 F.2d 409, 414 (7th Cir. 1989) ("To establish a prima facie case of racial discrimination, the plaintiff must prove (i) that he belongs to a racial minority . . . ."). The court does not understand these cases, however, to override *McDonald*'s clear holding. Rather, they seem merely to indicate that discrimination plaintiffs generally must be members of a protected class. But race is a protected class for purposes of Section 1981, and "everyone has a race." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 820 (7th Cir. 2006). Thus, the Seventh Circuit has explained that this element is "in essence a non-issue." *Id.*

Perhaps for this reason, the Seventh Circuit has not used the "racial minority" articulation of the test for Section 1981 claims in nearly twenty years. *See Galbreath v. Help at Home, LLC*, No. 24-cv-1661, 2025 WL 919574, at *5 (N.D. Ill. March 26, 2025). Moreover, the court is not aware of any Seventh Circuit case in which a Section 1981 claim was rejected solely because the plaintiff was white. And in one case where a district court seemed to dismiss a white plaintiff's "§ 1981 claim solely because he is white," the Seventh Circuit held that "[t]he district court's statement conflict[ed] with" *McDonald*. *O'Donnell v. Univ. of Chi.*, 45 F. App'x 524, 525 (7th Cir. 2002).

Some defendants also argue that plaintiff must meet a heightened standard. They cite *Mills v. Health Care Service Corp.*, 171 F.3d 450 (7th Cir. 1999), in which the Seventh Circuit held that "majority plaintiffs," such as white plaintiffs, must show certain "background circumstances" to make out a *prima facie* case of discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 457.[5] Although *Mills* was a Title VII case, the Seventh Circuit has since held

---

[5] *Mills* "note[d], however, that this modified test is not to be interpreted in a constricting fashion. It in no way precludes any plaintiff with direct evidence of discrimination from bringing his claim. Moreover, if a plaintiff cannot show background circumstances, but has established a logical reason to believe that the [employer's] decision rests on a legally forbidden ground, such as his race or gender, he may shift the burden to the defendant to prove that the challenged employment action was actually based on legitimate, non-discriminatory reasons." *Mills*, 171 F.3d at 457 (citation and internal quotation marks omitted).

8

that "[t]hese same principles apply in the context of a § 1981 action." *Hague*, 436 F.3d at 821–22.[6] However, applying *Mills* does not help defendants at this stage. *Mills* is a gloss on "the familiar three part burden shifting test established in *McDonnell Douglas*." *Mills*, 171 F.3d at 454. "*McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement." *Swierkiewics v. Sorema N.A.*, 534 U.S. 506, 510 (2022). It thus "has no application at the pleading stage." *Grady v. Bd. of Trustees of N. Ill. Univ.*, 78 F. Supp. 3d 768, 777 (N.D. Ill. 2015). Because *Mills* and its progeny are an elaboration on the standards for summary judgment, reliance on them at the pleading stage is "misplaced." *Petrovic v. Enterprise Leasing Co. of Chi.*, 513 F. App'x 609, 611 (7th Cir. 2013).

### b. Intentional Discrimination

Next, some defendants argue that Descamps's allegations do not include any indication of intentional discrimination. But the complaint alleges that the job postings contained the language "MUST BE A MINORITY." [36] ¶ 21. Read naturally it suggests that the postings expressly limited the applicant pool to racial minorities. That supports an inference of intentional discrimination.

### c. Absence of a Contractual Relationship

Next, the Skender Group argues that Descamps's complaint must be dismissed because it does not identify a contractual relationship. This argument is unpersuasive. "An employment relationship, including at-will employment, constitutes a contract for purposes of § 1981." *Garza v. Ill. Inst. of Tech.*, 17-cv-6334, 2018 WL 264198, at *3 (N.D. Ill. Jan. 2, 2018) (citing *Walker v. Abbott Lab'ys*, 340 F.3d 471, 475–78 (7th Cir. 2003)). And Descamps has identified an affected employment relationship: namely, the jobs referenced in Jolen's job postings.

### d. Failure to Apply

Next, defendants argue that Descamps does not have a viable claim under Section 1981 because he did not apply for any of the positions included in Jolen's job posting. "[A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006). As a result, "[i]f a plaintiff does not apply for a job vacancy that is posted, he cannot make a prima facie case for unlawful discrimination . . . unless the plaintiff demonstrates that the

---

[6] In response, Descamps argues that such heightened standards are likely to be abrogated by the Supreme Court in *Ames v. Ohio Department of Youth Services*, 145 S. Ct. 118 (2024), a case currently pending before the Court. *See Galbreath*, 2025 WL 919574, at *5. But unless and until that happens, this court remains bound by *Mills* and its progeny. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004).

9

employer's discriminatory practices deterred plaintiff from applying." *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 558 (7th Cir. 2004).

The Supreme Court first articulated the deterrence exception in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977).[7] There, the Court explained that "[t]he effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity." *Id.* at 365. Rather, "[a] consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection." *Id.*

Defendants argue, however, that Descamps has not alleged a "consistently enforced discriminatory policy" because he notes only two postings that included the minority requirement. This argument conflicts with the Supreme Court's reasoning in *Teamsters*. The *Teamsters* Court started from the premise that "[i]f an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs." *Id.* The Court then explained that "[t]he same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices," such as "by his consistent discriminatory treatment of actual applicants." *Id. Teamsters* thus teaches that a consistently enforced discriminatory policy discriminates against potential (not merely actual) applicants *because it is equivalent to an express discriminatory policy*. Here, Descamps has alleged an express discriminatory policy. It is thus unnecessary for him to also allege a "consistently enforced" but unannounced policy.

Of course, *Teamsters* further explains that a discriminatory policy is not enough. "A nonapplicant must show that he was a potential victim of unlawful discrimination." *Id.* at 367. "Because he is necessarily claiming that he was deterred from applying for the job by the employer's discriminatory practices, his is the not always easy burden of proving that he would have applied for the job had it not been for those practices." *Id.* at 367–68. At the pleading stage, however, a plaintiff need only plausibly *allege* that he was deterred from applying. Descamps has done so. *See* [36] ¶ 34.

Jolen nevertheless argues that, "based on the bare allegations in the [complaint], Plaintiff could have been a 'tester.'" [65] at 4 n.3. This argument is not persuasive for two reasons. First, it conflicts with the well-pleaded allegations in the complaint. "In the employment context, a 'tester' is an individual who, without the intent to accept an offer of employment, poses as a job applicant in order to gather

---

[7] Like *Hudson*, *Teamsters* is a Title VII case, rather than a Section 1981 case. *See* 431 U.S. at 328. However, "the analysis . . . is generally the same under either statute." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 n.2 (7th Cir. 2014).

10

evidence of discriminatory hiring practices." *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 291 n.1 (7th Cir. 2000). But the allegation in the complaint is that Descamps did *not* apply. Thus, he could not have been a tester. Second, even if the complaint did not exclude the possibility that Descamps was a tester, it did not have to. Although it is no longer the case that a motion to dismiss can be granted only if there is "no set of facts" consistent with the complaint that would entitle plaintiff to relief, *Twombly*, 550 U.S. at 561, neither is it the case that a complaint must exclude every set of facts that would not entitle a plaintiff to relief. Rather, the complaint need only "state a claim to relief that is plausible on its face." *Id.* at 570.

Accordingly, Descamps's decision not to apply for the positions subject to the minority requirement does not defeat his Section 1981 claims.

### e. Lack of Involvement

Every defendant except Jolen also argues that they were not sufficiently involved in the alleged discrimination to be held liable under Section 1981 because only Jolen (1) created the job postings and (2) would have been party to the employment relationship, if one had been created. This argument is unpersuasive. As explained above, the complaint alleges that Jolen imposed the minority requirement because of mandates from the other defendants. Although defendants correctly note that a Section 1981 plaintiff must be a party to the actual or potential contractual relationship, *see Domino's Pizza*, 546 U.S. at 479–80, it does not follow that a Section 1981 *defendant* must likewise be a party to the actual or potential contractual relationship. Rather, "a third party's interference with an individual's equal opportunity to enter into contracts" can give rise to liability under Section 1981. *Shaikh v. City of Chicago*, 341 F.3d 627, 630 (7th Cir. 2003).

In *Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870 (N.D. Ill. 2014), the court explained that a third party contractor who "controls the hiring decisions of its contracted employment agencies" can be held liable under Section 1981. *Id.* at 877. That is what Descamps alleges here: that the non-Jolen defendants controlled (directly or indirectly) Jolen's hiring decisions by imposing their own minority requirements. Although the non-Jolen defendants dispute those allegations, this case is at the pleading stage. Thus, the court must "assume the truth of the facts alleged in the operative complaint." *DeVillier v. Texas*, 601 U.S. 285, 292 n.2 (2024). The non-Jolen defendants will have an opportunity to respond to Descamps's allegations later in this case.[8]

CHA makes a related argument: that Descamps essentially attempts to hold it liable under a *respondeat superior* theory. As noted above, "§ 1983 provides the exclusive remedy for violations of § 1981 committed by state actors." *Campbell*,

---

[8] Because the court assumes the truth of the facts alleged in the complaint, the court need not address the evidence Descamps attaches to several of his responses to the motions to dismiss.

11

752 F.3d at 666–67. Section 1983 claims, in turn, do not allow for *respondeat superior* liability. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), however, "a municipality may be found liable under § 1983 when it violates [federal] rights via an official policy or custom." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). "To establish an official policy or custom, a plaintiff must show that his . . . injury was caused by (1) the enforcement of an express policy of the [municipal defendant], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Id.* (quotation omitted). Here, Descamps has alleged the first option—enforcement of an express CHA policy. Specifically, he alleges that CHA's mandates regarding the racial composition of its contractors' workforces led to discrimination against him. That satisfies *Monell*'s requirements.

CHA argues that its Ethics Policy undermines Descamps's attempts to hold it liable under *Monell*. This argument is unpersuasive for two reasons. First, CHA does not explain why the court can consider the Ethics Policy—which is not referenced in the complaint—in deciding a motion to dismiss. Second, even if the court could consider the Ethics Policy, CHA does not explain why an abstract, generalized policy of "adherence to all applicable laws and regulations that provide equal opportunity for all persons regardless of race" would insulate a municipality against *Monell* liability for the conduct alleged here.

### f. Punitive Damages

Finally, Albany Housing and the Michaels Organization also argue that the court should dismiss Descamps's request for punitive damages because plaintiff has not adequately alleged malice or reckless indifference toward federally protected rights. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535–36 (1999). The court need not decide, however, whether Descamps's allegations warrant punitive damages. Either way, dismissal is not warranted. A motion under Federal Rule of Civil Procedure 12(b)(6) may raise only a pleading's "failure to state a claim upon which relief can be granted," not its failure to correctly identify the particular relief that can be granted. *See, e.g.*, *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 874–75 (N.D. Ill. 2022); *Cothron v. White Castle System, Inc.*, 467 F. Supp. 3d 604, 615 (N.D. Ill. 2020); *Neals v. PAR Technology Corp.*, 419 F. Supp. 3d 1088, 1092–93 (N.D. Ill. 2019).

### 2. Equal Protection

Finally, Descamps also brings a § 1983 claim against CHA for alleged violations of the Fourteenth Amendment's Equal Protection Clause, which provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. CHA's only arguments for dismissing the equal protection claim are identical to its arguments for dismissing the Section 1981 claims—namely, that the equal protection claim attempts to

12

circumvent the prohibition on *respondeat superior* liability under § 1983, and that there is no evidence of intentional discrimination. For the reasons explained above, those arguments are not convincing. Thus, the court declines to dismiss Descamps's equal protection claim.

## CONCLUSION

For the reasons explained below, the pending motions to dismiss, [47], [54], [55], [56], [72], [74], are denied. The court orders jurisdictional discovery as to defendant the Michaels Organization. The other defendants shall file their answers by May 19, 2025.

Dated: April 28, 2025                                       /s/ Martha M. Pacold